May it please the Court, my name is Rachel Steenholt and I represent Mr. Atilano. Mr. Atilano was convicted at his bench trial of being an alien in possession of a firearm. We are requesting this Court to vacate his conviction for two independent reasons. First, the government failed to prove beyond a reasonable doubt that Mr. Atilano knew he was present in the United States lawfully, unlawfully. There is no dispute that Mr. Atilano was actually present in the United States unlawfully, but Rahif tells us that the government had to prove he knew he was here unlawfully. And the record demonstrated in multiple ways that Mr. Atilano did believe he was in the United States lawfully. When questioned by law enforcement, he didn't offer a fake name, which is common in these types of cases. He worked with law enforcement in Colorado on multiple occasions and faced no immigration consequences from doing so. Individuals that know they are present in the United States illegally do not seek out partnership with law enforcement. He stated at least nine times one of three things. That one, he has valid immigration papers. Two, to call his wife, as she had the papers. And three, that an attorney assisted with those papers. Some quotes, he states, you can speak to my wife and she will send immigration. Are we going to call my lady? You can talk to my lady. Here I have a paper that immigration sent me. They sent me a paper. Look for Veronica, et cetera. And when, at trial, when they dig into this, this information is objectively verified. His wife filled out the I-130 application. An attorney's name is on the application. Does it matter that the I, what is it, the 30? I-130. I-130, yep. Yeah. I-130. That it says that it is not evidence of proof of residence in the United States? That doesn't matter. So an important part of that is that that part is found in the question and answer section of the form, which we don't have that I-130 form as an exhibit in the record. And so there's no evidence that one even has to look at the question and answer section prior to completing the form. And to that point, the person that fills out that form is the qualifying relative of the alien. So it's not, it's not the alien. This was filled out by Veronica Flores, which is Mr. Adelano's wife. The government does not directly connect Mr. Adelano to that form. And so, to the extent- But when push comes to shove, is the argument that your client mistakenly believed, but genuinely believed, that he was legally in the United States because of that form? Or is there other evidence that comes into play that contributes to that reasonable belief? So, the form itself, his application was approved, this form was approved. But he doesn't reference really this form at all. All these other reasons that prove why he believes that he's here lawfully is- Well, some of those might be evidence that he does believe he's there, right? That he's not scared to work with the police. Right. Exactly. The foundation of his belief, in a sense, if you take a step back, why is it he believes? Is that in the record? And is it related simply to the single form? I'm not sure I'm understanding- Or am I asking you to squeeze your case into too small of a space here? Yeah. That might be. You know, the form, it was approved. So they started this immigration process and it was approved. And so, there's this belief that he has status. Now, they didn't go and, you know, follow through on the proper immigration steps. So we know he doesn't actually have status. But there's not enough in the record to show that he does not believe that he didn't have status. And the burden there, I guess, is on the government, right? Correct. Yeah. It was their burden to prove. And I know one point that they emphasize is the statement that he makes in this course of this interview. That statement is, quote, a weapon for a Mexican. It is a felony, they said there, or something that's very bad. That's line 944 of the government's translation, Exhibit 32. But to be clear, stating that a weapon for a Mexican is bad is not the same thing as stating I am present in the United States unlawfully. What about his suggestion that he had to, he wanted to claim asylum? Isn't there a reasonable inference that that means he knows he wasn't here properly? No. Well, that happens early on in the interview. He mentions asylum. But he's saying it in the context of he's fearful for his life. He's not saying I'm requesting asylum because I know I'm unlawfully present. Well, no. But, I mean, if he's legally in the country, why does he need asylum? Say that again. If he thinks he's legally in the country, why is he seeking for another means to stay in the country, I guess, is the government's suggested inference. Sure. So he discusses, he brings up in one line, asks about asylum. But that does not indicate that he believes that he is further on shortly thereafter after in that same interview, he's saying, no, I do have papers. And so I think that asylum, that one line where he says asylum, I think in the context of the overall 54-minute interview, I think it more so reflects that he's asking for extra protection. And I understand that. But, you know, we're a little hamstrung here, you know. This case was tried as a bench trial. But it came back with a general verdict form with special interrogatories. And no one ever asked for specific findings under Rule 23. You know, I was just shocked because in any bench trial I've ever been involved in, somebody's asked me to make the specific findings, you know. And then the judge would go through and make those specific findings. But we're really in a position where we have a bench trial, but this verdict leaves us in exactly the same position that we would look at it as though it were a jury trial. And that is, you know, we view the evidence in a light most favorable to the verdict as delivered. And inferences that may be drawn are drawn in favor of that verdict. And you know, you can look at it, the reason why, like, the government never consents to findings. And we're a little more stringent on the findings that the judge makes than a jury. But here we're stuck in a situation where, you know, there's evidence on this particular point that, you know, I'm asking for asylum, and it would appear that the judge drew an inference from that that he knew he was not lawfully present. And in a jury case, we would never, I mean, I don't think we'd turn that over. So you're asking us to do that here, and I'm trying to figure out, you know, how do we get there from here? Yeah. To that point, the court, you're right, the court doesn't make a detailed finding at all. But what it does say on transcript page 131 is it really hones in to the knowledge element on this statement that he makes. He doesn't discuss asylum in any of the court's findings. So I don't think it's accurate to state that asylum is the reason that one might Which statement? Which statement? The one about guns and Mexican weapons? Yeah, a weapon for a Mexican. It is a felony, they said there, or something. It's very bad. So the court states that. He says he's an alien and in possession of a firearm. And that's, a Mexican with a, having a firearm, and that's a bad felony, is not the same thing as stating, I am here, I am present unlawfully. Well, isn't it evidence, though, or circumstantial evidence that he knew that he was a prohibited person? So to that point, even if we were to assume that that statement says what the government says, it does. Even if we assume that it means what the government says it does? Which is that stating that I am a Mexican having a firearm is the same as him sort of saying I am present here unlawfully, assuming that interpretation. It is important when the statement is made, which is towards the very end of this interview. It's a 54-minute interview. And this is after Mr. Adelanto insisted that he was here lawfully. So this interview starts with a lot of confusion about why he's here. He thinks he's being, you know, accused of a murder or linked to it somehow. Then using the numbered lines in the government's translation, in the 300 to 400 range, this is when Mr. Adelanto insists he is here lawfully. And then line 800 is when the officer makes it crystal clear to him. He says, quote, you are here in jail because you are, number one, illegal here in the United States. Number two, as you are, you do not have permission to be here in the United States. You are a citizen of Mexico. You cannot have weapons on top of you. That's why you're here. Arrested. Mr. Adelanto responds, he understands. Line 936 is when he is asked, is it illegal for you to have a gun? And line 944 is when we get the statement where he parrots back what was said in line 800. Yeah, a weapon for a Mexican, it is a felony. Something very bad. So even if we were to assume that this is some sort of acknowledgment, this only means that at this point in the interview, he's acknowledging, yeah, I understand. You told me that this is illegal. But this does not mean he knew of his unlawful status at the time that he possessed the firearm, which was the day prior. So even viewing the evidence in the light most favorable to the verdict, to include interpreting this statement as the government wants you to, it is still insufficient to prove the knowledge element beyond a reasonable doubt. Thank you. Thank you for your argument. Mr. Kelderman, we'll hear from you. May it please the Court and counsel, I'm Eric Kelderman on behalf of the United States. The most important thing here is that circumstantial evidence may be used to show the knowledge. Case law specifically says that, the knowledge about the status. And the Eighth Circuit, this Court has also said that that burden is not particularly high, and that's why it said that it can be met by circumstantial evidence. Here we have the district court acting as the fact finder, and it believes that. Judge Viken made a few findings. They weren't lengthy nor explicit, but in any event, the defense did not ask for any additional fact finding from him, as Judge Erickson noted under Rule 23. So we have a verdict, and we have, Judge Viken made a specific finding about the defendant did know that he was here illegally. The statements that he made, regardless of when they were made, I do not believe that the record shows that Mr. Adelano said he was here lawfully. He made statements about, I have papers, call my wife, call immigration. But he's giving a lot of vague statements early on, and it's something that's I'm sure, you know, this Court has seen plenty of. As a prosecutor, I've seen plenty of. And a person is in an interview, and they're trying to say different things to get out of the situation that they are in. And this defendant was doing just that. He's trying to get them to do something else, rather than press him about the situation that he's in. And they're saying, look, we are immigration. You want us to call immigration? We're immigration. That's us. We know what's going on here. They knew that he did not have any status. They knew that a single form had been filled out. We don't have that form in the record, but we do have testimony about what that form contained, including that question-and-answer section that says this does not make you a citizen. This does not give you a lawful status. He, you know, that's all true. But I keep coming back to something that just is sort of, to me, just kind of rips the whole thing apart from the defense point of view, is that the dude said, these aren't my pants that he's wearing. He said, I found these pants, and the contraband in the pants was ammunition. And he said that early on. And isn't that evidence that he believes that being in possession of that ammunition is somehow contraband, and it's unlawful for him to possess? I mean, and it's so patently ridiculous, right? I mean, and it's like false claims of exculpatory evidence is something that we have consistently given weight to. And it just seems here, it's like, they're not my pants. And then the ammo's found in it. I mean, it just seems to me that whatever else that does, it shows pretty persuasively that he had some knowledge that he wasn't supposed to be possessing firearms or ammunition. Absolutely, Your Honor. It's another one of the circumstances, another one of the, an example of another thing that he was doing that was untruthful, trying to get himself out of this situation. He says that he doesn't, the pants weren't his, even though they were on him. I just put them on to stay warm in this hotel room that some random person, except first he says it was a stranger that led him into the room. Later on, he changes it and said it was a maid. He says the backpack that's between the two beds is not his, where the firearms and the rest of the ammunition were located. And then later on admits that. So when he's confronted with different things and he understands, I'm not getting away with this, this is not getting me out of custody, he moves on to a different story. He moves on to being under threats or having things happen to him in Colorado, and that's why he has to be in Rapid City, why he has to have firearms. But in the end, he acknowledges a firearm for a Mexican, that's a very bad thing. And it's a bad, I think he said bad felony. Well, that was after they told him it was, as I understood. Well, that's, they had told him that he's not here legally, but this is an acknowledgment that, okay, yeah, and he does say I understand when they said that. He doesn't say I'm here legally, I have papers. I don't believe he actually says I'm here lawfully. He just says I have papers and call my wife. Well, one might say that I have papers is a shorthand way of saying I'm here legally. And the point on the last statement was that they told him it was illegal to have a gun because he was here illegally. And then the argument is he repeated that back to them. I suppose that is, that is a way of looking at it. It absolutely is. But we have a fact finder that made a determination to the contrary. And there is evidence in the record to show, well, first of all, that he was illegal, not lawfully here, but he also acknowledged it. And at that point, or at one point, I don't remember if it was exactly at that point, he started saying that, no, but I didn't have it in my hand. So he's trying to still separate himself. He knows that he's not allowed to have this stuff in his possession. And he tries to make a distinction between actual physical possession and having the thing in his hand and trying to make the distinction, because he knows that he is a Mexican and that he is not allowed to possess the thing. And then, as you noted, Judge Kobus, he makes an asylum request. Again, some of the timing of this might mean something, simply because there are words that he might use that the agents had used when talking to him. But they hadn't suggested anything about asylum. He's the one that brought up asylum. He's the individual that believes that he would need asylum. There's no reason to ask for that if you are lawfully in the United States. The United States has the benefit. Standing here, I have the benefit of the verdict. We have evidence that would support it, that the evidence might be read a different way to mean something else. Certainly, that's a possibility. And if the defense wanted more information about Judge Bikin's findings, they could have asked for it. They did not. The United States submits that the evidence is more than sufficient here because we have the verdict by the court. We don't believe that there was any duress or any showing of duress that was specific or immediate for threats to him. And so, the United States asks that the court affirm the conviction in all respects. Very well. Thank you for your argument. Dean Hulse, we'll give you one minute for rebuttal if you want to address the matter of the pants. Or something else. But that came up for the first time during the government's argument, so I thought you might want to speak to it. Thank you. To this point about him having some sort of knowledge about not being able to possess a firearm or knowing that that's a bad thing for him, the element that has to be proven here is not whether or not he knows he can't have a firearm. It is whether or not he is present in the United States unlawfully. So, he can know that he shouldn't have a firearm, but the government needed to prove the knowledge of his prohibited status of being an alien that's unlawfully present in the United States. That's an important distinction. And you're arguing there's no inference that can be made between those two? That's correct. Yeah. What other reason would there be that he couldn't have a firearm? Well, he keeps saying there's a lot of confusion that he has. So, he keeps stating that he, you know, he never touched it. So, maybe he doesn't think that you should brandish it or maybe he doesn't think that... What about the ammunition? Why would he try to distance himself from the ammunition in the pant pockets? Yeah. If he knows that he's not allowed to possess a firearm or if he knows that he shouldn't have ammunition, that, again, he can know that and he can believe that he's not allowed to have that, but that doesn't mean that he's... He can distance himself from that, but that doesn't mean he's... I know, but I'm trying to understand why he would think he was forbidden other than the fact that he knew he was illegal. Well, the officers in Colorado told him, you know, you're not... If we find you with another firearm, we will give you a ticket. So, he's told in Colorado, you're not, you know, you will get a ticket if we find you with a firearm. And so, you think under that, that one could reasonably infer that because of the statement in Colorado and what happens during the conversation with the authorities here, that he could have mistakenly believed that somehow it was criminal to be a Mexican in the country with a firearm, right? That you could be legally here, have status here, and you just couldn't possess a firearm. Is that the argument you're making? There's that. Yep, that's correct. That's what we believe his mistaken belief is. And we know that that's inaccurate. Somebody can be a Mexican and be in the United States and possess a firearm. You have to be unlawfully present to not be able to possess a firearm. Now, remind me, what was the situation in the Colorado encounter? Why were they telling him he would get a ticket? They had, he had had a, they found him with a firearm. They said, if we have you, if we find you with another firearm, is the only line that we have on this. If we find you with another firearm, we will give you a ticket. But we understand why you had the firearm because you're, you've had threats to your life, so we get it. So, he states that in the interview with law enforcement. But you're saying there's no record as to what they told him about why he was forbidden? Correct. Which is the government's burden to prove, right? They could have brought in the Colorado authorities and spelled that out further, and they didn't. And this was the government's burden to prove. And our position is that there is just insufficient evidence on the knowledge element, knowledge of his illegal status, not knowledge of whether or not he could have a firearm or not, but knowledge of his illegal status if he was unlawfully present in the United States. All right. Thank you for your argument. Thank you to both counsel. The case is submitted. Court will file a decision in due course. Counsel are excused.